United States District Court
Southern District of Texas
**ENTERED**
September 02, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:16-CV-408 |
| ADSIL, INC., CALALLEN INDEPENDENT SCHOOL DISTRICT, and CJO ENTERPRISES, INC., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

This action for declaratory judgment arises out of a dispute between Colony Insurance Company ("Colony") and its insured, Adsil, Inc. ("Adsil"). Colony requests a determination regarding its duty to defend or indemnify Adsil in an underlying lawsuit filed against Adsil in Texas state court. Colony further seeks a declaration that CJO Enterprises, Inc. ("CJO") has breached its duty to defend and indemnify Adsil in the same underlying lawsuit. Adsil and CJO are two of several defendants in the suit styled *Calallen Independent School District v. Teal Construction, et al.*, No. 2014 DCV-6027-B, in the 117th Judicial District Court, Nueces County, Texas (the "underlying lawsuit"). The claims in the underlying lawsuit arise out of Adsil and CJO's roles in the installation of multiple air cooled condensing units and roof top air conditioning units on Calallen Independent School District property. (Doc. No. 19, Ex. 5.)

Pending before the Court are Motions to Dismiss filed by CJO (Doc. No. 25) and Adsil (Doc. No. 26), and a Motion for Summary Judgment filed by Colony (Doc. 27). After considering the Motions, the responses thereto, and the applicable law, the Court **GRANTS** CJO's Motion to Dismiss, **GRANTS IN PART** Adsil's Motion to Dismiss, and **DENIES**

1

Colony's Motion for Summary Judgment.

I. **BACKGROUND**

Adsil is the manufacturer of a coating product that is used to prevent air conditioning units from corroding. (Doc. No. 19 ¶ 42.) This product was used on air conditioning units owned by the Calallen Independent School District ("CISD"). (*Id.*) In some instances, it appears that Adsil contracted with CJO to apply the product, and in other instances it appears that the school district contracted directly with CJO to apply the product. (Doc. No. 26, Exs. 2 & 3.) Adsil and CJO were parties to an Independent Mobile Installer Agreement, signed in 2005, which contains an indemnity provision. (Doc. No. 19, Ex. 1.) In this provision, Adsil is the indemnitee of CJO. (*Id.*) Adsil claims that this Mobile Installer Agreement was no longer in place when the events that are the subject of the underlying lawsuit occurred (Doc. No. 31 ¶ 5), but CJO does not dispute the validity of the Mobile Installer Agreement (Doc. No. 25 ¶ 3).

Since filing the underlying lawsuit, CISD has dismissed its claims against Adsil. However, two other defendants in the underlying lawsuit, Weathertrol, Inc. ("Weathertrol") and Air Pro, Inc. ("Air Pro"), have filed cross-claims against Adsil for contribution. (Doc. No. 26, Exs. 2 & 3.)

Colony has been funding the defense of Adsil in the underlying suit, with reservation of its right to bring this action. Colony's insurance policy for Adsil specifically excluded the duty to defend or indemnify for claims "arising directly or indirectly out of the installation, service or repair of your product(s)' performed by independent contractors or subcontractors of an insured...." (Doc. No. 27 ¶ 11.) Colony claims that this exclusion encompasses all claims asserted against Adsil, thereby relieving Colony of any duty to defend or indemnify Adsil. Additionally, Colony asserts, as subrogee for Adsil, that the indemnity agreement in the Mobile

Installer Agreement between Adsil and CJO requires CJO to defend Adsil in the underlying suit, and to pay damages to Colony for CJO's breach of this agreement. Colony moves for summary judgment with regard to its duty to defend and/or indemnify Adsil. (Doc. No. 27 ¶ 4.)

CJO, in turn, files a motion to dismiss, arguing that the indemnity clause in the Mobile Installer Agreement between Adsil and CJO includes only a duty to indemnify, not a duty to defend. Because the duty to indemnify is not typically ripe for adjudication until a final judgment is entered in the underlying case, CJO claims that Colony's action is not ripe and must be dismissed for lack of subject matter jurisdiction. Similarly, Adsil argues that Colony's action for declaratory judgment regarding its duty to defend and/or indemnify Adsil is not ripe and must be dismissed. Adsil also argues that Colony's action must be dismissed for failure to state a claim upon which relief can be granted.

## II. MOTIONS TO DISMISS

The Court will first address the Motions to Dismiss filed by CJO and Adsil.

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)). "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston,* No. 09–20534, 2010 WL 3341643, at *3 (5th Cir. Aug.26, 2010). "In determining whether a matter is ripe for judicial review [the Fifth Circuit considers] 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court

consideration.' " *Anderson v. School Bd. of Madison Cnty.,* 517 F.3d 292, 297 (5th Cir.2008) (citing *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir.2000) (internal quotation marks omitted)). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir.2000). "Generally, issues are not ripe if 'further factual development is required.' " *Anderson,* 517 F.2d at 297 (citing *Wolfe,* 212 F.3d at 895).

A court may also dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must contain sufficient factual matter that, if it were accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.

*Iqbal*, 556 U.S. at 678 (citation omitted). The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). The court should not evaluate the merits of the allegations, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B. CJO's Motion to Dismiss

#### i. Parties' Arguments

Colony alleges, and CJO does not dispute, that Adsil and CJO were parties to a Mobile Installer Agreement at the time the incidents at issue in the underlying lawsuit occurred. (Doc. No. 25 ¶ 3.) Adsil disputes this claim in its response to Colony's Motion for Summary Judgment (Doc. No. 31 ¶ 5), but for the purposes of CJO's Motion to Dismiss, it is assumed that the parties were subject to the Mobile Installer Agreement. This agreement contained the following indemnity provision:

> Mobile Installer shall indemnify and hold Company and its officers, directors, employees, agents and representatives, harmless from and against any and all claims, losses, obligations, liabilities, costs and expenses (including without limitation legal and other fees) arising from any negligent acts or omissions of Mobile Installer or its employees, agents or representatives…(Doc. No. 25 ¶ 2.)

CJO argues that this indemnity agreement creates only a duty to indemnify upon a finding of negligence on the part of CJO, not a duty to defend Adsil. (Doc. No. 25 ¶ 3.) While a duty to defend arises at the initiation of a lawsuit, CJO claims, a duty to indemnify does not accrue until after a factual determination of CJO's liability to CISD. (*Id.*) Because the underlying

lawsuit is ongoing and there has been no finding of negligence against CJO, CJO asserts that the issue of CJO's duty to indemnify Adsil is not ripe. (*Id.*) As such, according to CJO, the Court has no jurisdiction over Colony's claims against CJO, and the claims against CJO should be dismissed. (*Id.*)

In its response, Colony (as subrogee for Adsil) concedes that Adsil does not yet have a justiciable claim against CJO for indemnity of a judgment, because there has been no judgment in the underlying case. (Doc. No. 29 ¶ 2.) However, Colony argues, the issue of indemnification for legal fees and defense costs is ripe, because those costs have already been paid and were specifically alleged in its complaint. (*Id.*)

### ii. Analysis

In this diversity case, Texas law governs all substantive issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Texas law, the duty to defend and the duty to indemnify are separate and distinct duties. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011). "One duty may exist without the other and, thus, although a party may not have a contractual duty to defend another party, it may still have a contractual duty to indemnify that party for defense costs." *Crimson Expl., Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 441 (Tex. App. 2010). The existence and justiciability of each distinct duty must therefore be analyzed individually. *Id.*

Texas recognizes the "longstanding rule that a claim under a liability indemnification clause does not accrue, and thus is not mature, until the indemnitee's liability to the party seeking damages becomes fixed and certain." *SMBC Rail Servs., LLC v. W. Petroleum Co.*, No. 3:14-CV-03982-P, 2015 WL 7709608, at *3 (N.D. Tex. June 17, 2015) (citing *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999). The earliest possible accrual date for an

indemnity agreement is the day that judgment is entered against the indemnitee in the underlying lawsuit. *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 388-89 (5th Cir. 2007).

Unlike a duty to indemnify, the duty to defend may be triggered by the pleadings in an underlying lawsuit. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011). Thus, if CJO did have a duty to defend Adsil, this duty would likely have been triggered by the pleadings in the underlying lawsuit, and CJO would have breached its agreement with Adsil by refusing to defend Adsil.

However, the indemnity clause in the Mobile Installer Agreement creates no duty to defend. The clause reads, "Mobile Installer shall indemnify and hold Company…harmless from and against any and all claims, losses, obligations, liabilities, costs and expenses (including without limitation legal and other fees)…." When interpreting an indemnity clause, courts give "reasonable effect" to the provision. *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 372 (Tex. App. 2005) In *English*, the Houston Court of Appeals found that the phrase "BGP shall protect, indemnify, *defend*, and hold harmless…" created both a duty to defend and a duty to indemnify. *Id.* at 373 (emphasis in original). While the indemnification clause in *English* is similar to the one at issue here, Adsil and CJO's indemnification clause specifically omits the term "defend." In fact, the term "defend" appears nowhere in the indemnity provision. Giving reasonable effect to the terms used in the contract, and understanding the separate and distinct nature of the two duties, the Court finds that CJO did not agree to defend Adsil.

The Mobile Installer Agreement, if valid, does create a duty to indemnify Adsil, including a duty to indemnify for legal costs, if CJO is found negligent in the underlying lawsuit. However, the duty to indemnify, even for legal costs, is separate and distinct from any duty to defend. *See Crimson Expl., Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 441 (Tex. App.

2010) ("[A]lthough a party may not have a contractual duty to defend another party, it may still have a contractual duty to indemnify that party for defense costs."). Furthermore, CJO's duty to indemnify Adsil, and the amount of potential damages (including total legal costs), will not be known until there is a final judgment in the underlying lawsuit.

Because the Mobile Installer Agreement contains no duty to defend, and because a duty to indemnify does not accrue until a judgment is entered in the underlying lawsuit, the Court finds that Colony's claims against CJO are not ripe for adjudication. Accordingly, CJO's Motion to Dismiss is **GRANTED**.

### C. Adsil's Motion to Dismiss

Adsil asks this Court to dismiss Colony's action for declaratory judgment because the action is not "sufficiently ripe to be justiciable" and because Colony's complaint fails to state a claim for relief that is plausible on its face. (Doc. No. 26.) Although Adsil states that it moves to dismiss Colony's action for failure to state a claim, Adsil makes no argument in support of its statement. Given this lack of support and the high standards for granting a motion to dismiss for failure to state a claim, the Court finds that Colony does state a plausible claim to relief, and **DENIES** Adsil's Motion to Dismiss for failure to state a claim. This leaves Adsil's Motion to Dismiss based on ripeness.

#### i. Parties' Arguments

Adsil argues, as does CJO, that Colony's claims against Adsil are not ripe because the duty to indemnify does not accrue until a judgment has been rendered against an insured. (*Id.* at ¶ 12.) In its response, Colony argues that the insurance agreement between Colony and Adsil also includes a duty to defend, which is justiciable. (Doc. No. 28 ¶ 6.) Furthermore, Colony asserts that the duty to indemnify is justiciable because of a narrow exception to the general rule. This

exception allows a court to determine the duty to indemnify before the insured's liability is determined "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original).

### ii. Analysis

As explained above, a duty to indemnify is not typically justiciable until after a judgment has been entered in the underlying lawsuit. *SMBC Rail Servs., LLC v. W. Petroleum Co.*, No. 3:14-CV-03982-P, 2015 WL 7709608, at *3 (N.D. Tex. June 17, 2015) (citing *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999). However, a duty to defend may be triggered by the pleadings in an underlying lawsuit. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011). Thus, whether or not an insurer has a duty to defend is justiciable at the start of underlying litigation.

Colony and Adsil's insurance agreement states, "[Colony] will pay those sums that [Adsil] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Doc. No. 27, Ex. 1, at 1.)

The agreement clearly states that Colony has a duty to defend Adsil. Additionally, Colony's First Amended Complaint asks the Court to determine "whether Plaintiff Colony has a duty to defend or indemnify its insured, Adsil, Inc...." (Doc. No. 19 ¶ 1.1.) There is little dispute that the pleadings in the underlying lawsuit triggered Colony's duty to defend, because Colony has been paying and continues to pay for the defense of Adsil in the underlying case. (*Id.* at ¶ 4.5.) Therefore, Colony's declaratory action for a determination of its duty to defend Adsil is justiciable. Accordingly, the Court **DENIES** Adsil's Motion to Dismiss with regard to that claim.

9

However, Colony also asks the Court to determine its duty to indemnify Adsil, which typically only accrues after a judgment has been entered in the underlying lawsuit. (*Id.* at ¶ 1.1.) Colony argues that the Court can determine whether or not Colony has a duty to indemnify at this time because "the same facts that preclude the duty to defend also preclude any duty to pay...." (Doc. No. 28 ¶ 6.) But a determination that there is no duty to defend is a prerequisite to the applicability of this exception, and this Court has not yet determined that Colony has no duty to defend. Therefore, the narrow exception allowing a court to determine an insurer's duty to indemnify before a judgment in the underlying suit does not apply here. As such, the Court **GRANTS** Adsil's Motion to Dismiss Colony's claim regarding its duty to indemnify.

### III. MOTION FOR SUMMARY JUDGMENT

Colony, in turn, brings a Motion for Summary Judgment, asking the Court to declare that Colony has no duty to defend or indemnify Adsil in the underlying litigation between CISD and Adsil (and the cross-claims that have ensued). (Doc. No. 27 ¶ 1). As the Court explained above, the issue of Colony's duty to indemnify Adsil is not justiciable, and the Court has dismissed that claim. Thus, Colony's Motion for Summary Judgment with regard to its duty to indemnify Adsil is **DENIED**. The only issue that remains, then, is Colony's duty to defend Adsil.

#### A. Legal Standard

##### i. Summary Judgment Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### ii. Eight Corners Framework

Colony alleges that it has no duty to defend Adsil in the underlying lawsuit because of an independent contractor and subcontractor exclusion in its insurance policy. To determine whether an exclusion provision applies, the allegations in the underlying suit must be considered in light of the provisions of the insurance policy. *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 309 (5th Cir. 2010). Because the only two relevant documents are the insurance policy and the pleadings of the underlying suit, the inquiry is often referred to as the Eight Corners Rule. *Id.* In applying the Eight Corners Rule, the allegations as set forth in the complaint are liberally construed without reference to their truth or falsity, to what the parties know or believe to be the true facts, or to a legal determination of the true facts. *Id.* In reviewing the underlying pleadings, the Court focuses on the factual allegations that show the origin of the damages rather than on the legal theories advanced. *Id.* The insurer has the burden to prove an exclusion applies, and any doubts about an exclusion should be resolved in favor of the insured. *Gore Design Completions,*

*Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). If a complaint potentially includes a covered claim, the insurer must defend the entire suit. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

### B. Parties' Arguments

Colony urges that it has no duty to defend Adsil because its insurance policy with Adsil contains an exclusion for claims "arising directly or indirectly out of the installation, service or repair of "your product(s)" performed by independent contractors or subcontractors of an insured...." (Doc. No. 27 ¶ 11.) Colony alleges that CJO was a contractor for Adsil, that CJO applied Adsil's product to the air conditioning units at issue in the underlying lawsuit, and that the claims against Adsil arose out of this application. Given the broad interpretation of "arising out of" under Texas law, Colony argues that the exclusion in their policy relieves them of their duty to defend Adsil, even if "other allegedly negligent acts by Adsil or others contributed."

In response, Adsil refers to a cross-claim filed against Adsil by Weathertrol which states that Weathertrol contracted directly with CJO. As a result, Adsil argues, Adsil was simply a supplier—a situation that falls outside of Colony's subcontractor exclusion. (Doc. No. 31 ¶ 10-11.) To this point, Adsil affirms that it "was not hired by the school district in any capacity, and there is no summary judgment evidence showing that Adsil was in any position to engage the services of a subcontractor...Adsil did not engage the services of any independent contractors or subcontractors with regard to work at Calallen ISD." (*Id.* at 11.) This is supported by an affidavit from Mark Thompson, the Technical Director at Adsil.[1] (*Id.*, Ex. E.) Finally, Adsil points out

---

[1] Colony objects to Adsil's inclusion of Mark Thompson's affidavit, arguing that it is "conclusory" and "self-serving" and "does not meet the requirements for the exception to the eight corners rule in Texas." (Doc. No. 32 ¶ 9.) The Court does not address the merits of this argument, however, because the Court finds that even without considering the facts alleged in Mr. Thompson's affidavit, summary judgment must be denied.

that the underlying pleadings go beyond CJO's allegedly negligent application of Adsil's product, and include claims directly against Adsil for "negligence with regard to providing instructions about the cleaning of air conditioner coils." (*Id.* at ¶ 10.)

### C. Analysis

In order to succeed in its motion for summary judgment, Colony must show that there is no genuine dispute as to whether the insurance policy's subcontractor exclusion applies to all of the claims asserted against Adsil. Following the dictates of the Eight Corners Rule, the Court will examine the relevant portions of the insurance policy and the pleadings in the underlying suit. The subcontractor exclusion in Colony's insurance agreement reads in full:

> This insurance does not apply to:
> Subcontractors and Independent Contractors – Installation, Service of Repair of "Your Product"
> "Bodily injury," "property damage" or "personal and advertising injury";
> (1) Arising directly or indirectly out of the installation, service or repair of 'your product(s)' performed by independent contractors or subcontractors of an insured; or
> (2) Sustained by any contractor, subcontractor, or independent contractor or any of their "employees," "temporary workers," or "volunteer workers." (Doc. No. 27 ¶ 11.)

CISD's Twelfth Amended Petition (Doc. No. 31, Ex. 1) reads, in pertinent part:

> Based on information and belief, one or more of the Defendant manufacturers of the HVAC/rooftop units utilized as their product of choice for corrosion protection a product made by Adsil, Inc....Adsil, in turn, sub-contracted with Defendant CJO, Inc., to "install" Adsil's Microguard product for the purpose of servicing the manufacturers' HVAC units....Defendant CJO was hired to apply a product manufactured by Adsil to coat/recoat HVAC coils on units belonging to Plaintiff, which had been installed and operating on school district property.

Weathertrol's First Amended Cross-Claim (Doc. No. 31, Ex. 2) against Adsil alleges that

> Weathertrol contracted directly with CJO to apply Adsil's protective coating to a 12 ton Lennos RTU. Thus, to the extent

> there are issues with the instructions for applying the coating or the application thereof at CHS, Adsil would be responsible for any alleged damages…Adsil failed to provide instructions that would allow one to properly apply the materials, particularly in regard to the pre-application cleaning of the coils.

AirPro's First Supplemental Cross-Claim (Doc. No. 31, Ex. 3) against Adsil states:

> [T]he evidence indicates that the coating applied to the units at CMS, Wood, East and McGee were manufactured by Adsil and applied by CJO. Thus, to the extent there are issues with the coating material itself or the application thereof or the instructions for applying the coating or the instructions for maintaining the coating, both CJO and Adsil would be responsible for any alleged damages. Still further, Adsil, as a manufacturer of the coating product, owes indemnity to Air Pro pursuant to Tex. CPRC Section 82.02, to include Attorney's fees.

Colony argues that the "arising directly or indirectly out of" language used in its policy exclusion should be interpreted to exclude coverage for all claims asserted against Adsil, even those alleging that Adsil negligently provided insufficient instructions for application of its product. According to Colony, "the fact that Adsil had a contractor install the product is sufficient to trigger the exclusion, whether or not the installation was negligent or proximately caused the loss claimed, and whether or not other allegedly negligent acts by Adsil or others contributed." (Doc. No. 27 ¶ 6.) Indeed, "arising out of," as used in insurance policy exclusions, has been interpreted broadly by Texas courts, requiring only "a causal connection between the excluded operation and the loss." *Gen. Agents Ins. Co. v. Arredondo*, 52 S.W.3d 762, 764-65 (Tex. App.—San Antonio 2001, pet. denied). Thus, if the installation of Adsil's product by a subcontractor was a but for cause of all of the claims against Adsil, Colony's policy exclusion should bar coverage. However, if conduct that clearly falls outside of the subcontractor exclusion independently caused the injury, Colony has a duty to defend Adsil. *Willbros*, 601 F.3d at 311 ("[C]onduct that clearly falls outside of the professional services exclusion provides an

independent but for cause of the injury.").

Examining the pleadings in the underlying lawsuit, it is not clear that all of the claims against Adsil arise out of the installation of its product by a subcontractor. Although CISD alleges that Adsil "sub-contracted" with CJO to install Adsil's product, Weathertrol's pleading asserts that Weathertrol "contracted directly" with CJO to apply Adsil's product. AirPro's cross-claim states only that the coating applied to the air conditioning units was "manufactured by Adsil and applied by CJO." It is possible that both CISD and Weathertrol's allegations are true—the underlying lawsuit relates to the installation of more than 200 air conditioning units over the course of five years, involving multiple defendants and several contracts. Thus, conduct that is covered under Colony's policy exclusion and conduct that falls outside of the exclusion could have jointly contributed to CISD's loss.

When plaintiffs in the underlying suit allege covered and excluded causes for their injuries, Texas courts distinguish between "separate and independent" causation and "concurrent" causation. *Id.* In cases involving separate and independent causation, "the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion." *Id.* In cases involving concurrent causation, "the excluded and covered events combine to cause the plaintiff's injuries...Because the two causes cannot be separated, the exclusion is triggered." *Id.*

In this case, Weathertrol's complaint against Adsil alleges conduct that could have caused CISD's injury independent of any conduct that would qualify under Colony's subcontractor exclusion. Weathertrol alleges that it contracted directly with CJO, not Adsil. If this is true, CJO was not a subcontractor for Adsil for this portion of the claims, and any injury that CISD sustained as a result of Weathertrol's contract with CJO falls outside of Colony's

exclusion. This conduct would have caused the injury separately and independently of any contract work that would fall under Colony's exclusion. The Eight Corners Rule dictates that the allegations as set forth in the underlying complaint should be liberally construed without reference to their truth or falsity, and that any doubts about an exclusion should be resolved in favor of the insured. *Id.* at 309; *Gore Design*, 538 F.3d at 370. Furthermore, because this is a motion for summary judgment, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The Court finds that there is a genuine dispute about whether some of Adsil's conduct at issue in the underlying lawsuits falls outside of the subcontractor exclusion in Colony's insurance agreement. As such, summary judgment is not appropriate, and the Court **DENIES** Colony's Motion for Summary Judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** CJO's Motion to Dismiss, **GRANTS IN PART** Adsil's Motion to Dismiss, and **DENIES** Colony's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas this 2nd day of September, 2016.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE